STATE OF ALABAMA, ex rel., Don SIE-
GELMAN, Attorney General, and Guy
Hunt, Don Siegelman, and Leigh Pe-
gues, individually as citizens of the
State of Alabama, Plaintiffs–Appellees,

v.

The UNITED STATES ENVIRONMEN-
TAL PROTECTION AGENCY, and Wil-
liam K. Reilly, Administrator of the En-
vironmental Protection Agency, Defen-
dants–Appellants,

Chemical Waste Management,
Inc., Intervenor,

State of Texas, Intervenor–Appellant.

No. 90–7174.

United States Court of Appeals,
Eleventh Circuit.

March 1, 1991.

Brian E. Berwick, Asst. Atty. Gen., Environmental Protection Div., Austin, Tex., for State of Tex.

James Eldon Wilson, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., David C. Shilton, Robert L. Klarquist, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for Federal Defendants: E.P.A., et al.

Martha P. Boyd, Marshall Timberlake, John P. Scott, Jr., Balch & Bingham, Birmingham, Ala., Richard C. Kneisel, Asst.

Atty. Gen., Montgomery, Ala., for State of Ala., Guy Hunt, Siegelman and Pegues.

Before COX and BIRCH, Circuit Judges, and GIBSON *, Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal involves interpretation of Fed.R.Civ.P. 65(c) ("Rule 65(c)"), which requires an applicant for injunctive relief to post a security bond to cover "payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Appellees, the State of Alabama and three individual plaintiffs who are Alabama citizens (hereinafter "Alabama"), obtained preliminary and permanent injunctive relief in the district court against the appellant United States Environmental Protection Agency ("EPA") and were required to post a bond pursuant to Rule 65(c). On appeal to this court, the permanent injunction was dissolved and the case was dismissed for lack of subject matter jurisdiction. 871 F.2d 1548. As a direct result of the improper restraint, EPA allegedly incurred substantial costs and damages and sought to recover against the bond, but the district court granted Alabama's request to be discharged from any obligation on the bond. This appeal followed, and we hereby REVERSE and REMAND for a determination of the amount of Alabama's liability on the bond under the standards set forth in this opinion.

## I. BACKGROUND

This litigation concerns an attempt to dispose of hazardous waste under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA"). The cleanup site is a former petrochemical plant located in South Houston, Texas, and the proposed disposal site is a hazardous waste treatment facility in Emelle, Alabama, owned and operated by Chemical Waste Management, Inc. ("CWM"). The factual history of the dispute was chronicled by this court in the first appeal and need not be repeated here. *See Alabama v. United States Environmental Protection Agency*, 871 F.2d 1548, 1551–53 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989) ("*Alabama I*"). We will, however, review the procedural posture of this case to explain why our holding is limited to an interpretation of Rule 65(c) under these facts.

Alabama originally filed suit to enjoin any shipment of hazardous waste from the cleanup site into Alabama. On October 21, 1988, the district court issued a temporary restraining order against EPA. Two intervenors, the State of Texas and CWM, then joined EPA in moving the district court to set an appropriate sum for security as required by Rule 65(c). The motion for security was granted on October 31, 1988, and the amount of the bond was set at $564,970.00 [1] in an order that entered a preliminary injunction against EPA's participation in the cleanup effort as proposed. EPA, Texas and CWM then appealed the grant of injunctive relief to this court, and Alabama cross-appealed from the bond requirement.[2]

On December 15, 1988, while those appeals were pending, the district court granted partial summary judgment in favor of Alabama and entered a permanent injunction against implementation of the cleanup plan until Alabama had a chance to

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Each of the three individual plaintiffs was required to post a bond of $1.00, and the State of Alabama was responsible for the remaining $564,967.00. The figures were based upon an affidavit from the project manager for the cleanup effort, James A. Feeley, who calculated

delay costs of $564,970.00 if the project were delayed from October 21, 1988 (the first day of the TRO) to December 20, 1988 (the projected date of trial on the merits).

2. Alabama argued in its cross-appeal that the bond improperly secured the claims of the intervenors, Texas and CWM, even though those parties were allegedly not bound by the preliminary injunction.

participate in the formulation of a new plan. The bond was preserved under the terms of that order. EPA appealed again, and this court consolidated the second appeal with the unresolved appeal of the preliminary injunction and Alabama's cross-appeal.

The *Alabama I* decision, dated April 18, 1989, reversed the grant of partial summary judgment and the preliminary injunction, dissolved the permanent injunction, and dismissed the case for lack of subject matter jurisdiction. The only mention of the bond was in the final paragraph of the opinion, which stated that "[t]he challenge to the bond requirement imposed in connection with the grant of the preliminary injunction is DISMISSED as moot." *Alabama I*, 871 F.2d at 1560.

Upon their return to district court, the parties advanced competing interpretations of that single sentence. Alabama argued that all obligors on the bonds should be discharged from their obligations because the bond issue had been mooted by this court; EPA, Texas and CWM opposed discharge and claimed that the *Alabama I* decision merely mooted Alabama's challenge to the bond requirement, not the bonds themselves. The district court agreed with Alabama and granted its request for discharge on January 8, 1990.[3]

## II. DISCUSSION

The appellants, EPA and Texas[4], argue that the district court erred twice in granting Alabama's request for discharge on the bond. The first claim requires analysis of this court's disposition of the bond issue in *Alabama I*. EPA contends that the panel did not intend to discharge Alabama from all obligations on the bond. The only issue presented by Alabama's cross-appeal in that case related to the scope of the bond's protection—specifically, whether that protection extended to Texas and CWM.

Thus, EPA argues that the issue of discharge relative to EPA was not properly before the court. EPA's second claim concerns the district court's alternative holding that, even if the *Alabama I* opinion did not moot the bond issue in its entirety, discharge was nonetheless justified on equitable grounds. EPA believes that holding violates the purpose of Rule 65(c) and constitutes an abuse of discretion. We will consider each of these arguments in turn.

### A. *The District Court's Interpretation of Alabama I*

■ In its opinion discharging Alabama from any obligation on the bond, the district court discussed the *Alabama I* decision as follows:

> The Court of Appeals held that this Court did not have jurisdiction to entertain this suit. In connection with this holding, the Court of Appeals dismissed as moot any issue pertaining to which of the Defendants the posted security should run in favor of. The bond issue was before the Appellate Court, and it refused to grant any relief with respect to that issue. If there was still an issue in this case regarding the bond, the Court of Appeals could have decided the issue or remanded it to this Court for a further determination....

Record, Volume 5, Tab 96 at 3–4. The interpretation of a prior Eleventh Circuit decision presents a question of law, which is subject to *de novo* review by this panel. *See United States v. Huppert*, 917 F.2d 507, 510 (11th Cir.1990).

■ In *Alabama I*, the court only disposed of the limited "bond issue" presented by Alabama's cross-appeal. Alabama contended that the intervenors, Texas and CWM, were not bound by the preliminary injunction, and challenged the bond requirement for allegedly securing potential claims by those parties. That challenge,

---

**3.** On September 27, 1989, the three individual plaintiffs filed a Request for Refund of the nominal bonds they had been previously required to post. That request was granted by the district court on October 5, 1989, before EPA and the intervenors were able to file a response.

**4.** CWM is not a party to this appeal. Moreover, Texas has stated that its interests in this appeal are aligned with EPA's, so we will refer to both appellants as "EPA" throughout the remainder of this opinion.

however, was directed at the *scope* of the bond; Alabama never sought to discharge its liability on the bond against potential claims by EPA in *Alabama I.* Accordingly, the decision should not be read to grant such relief.

The plain language used by this court in the first appeal supports our conclusion that the district court misread the mandate of *Alabama I.* Alabama's "challenge to the bond requirement imposed in connection with the grant of the preliminary injunction" was dismissed as moot after the preliminary injunction was reversed. *Alabama I,* 871 F.2d at 1560. Those words do not imply that the bond requirement was rendered superfluous by the panel's decision to dismiss the case. *See University of Texas v. Camenisch,* 451 U.S. 390, 396–98, 101 S.Ct. 1830, 1834–35, 68 L.Ed.2d 175 (1981). By its terms, Rule 65(c) is designed to secure the potential claims of "any party who is found to have been wrongfully enjoined or restrained." The dissolution of an existing injunction is therefore the first step to *recovery* against the bond and does not require discharge under these facts.

The district court also expressed its concern that dismissal of the case on jurisdictional grounds might divest it of jurisdiction over the bond, citing *Buddy Systems, Inc. v. Exer–Genie, Inc.,* 545 F.2d 1164, 1166 (9th Cir.1976), *cert. denied,* 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977), and *Bulova Watch Co. v. Rogers–Kent, Inc.,* 181 F.Supp. 340, 342 (E.D.S.C.1960). However, *Bulova Watch* does not discuss the jurisdictional issue, and *Buddy Systems* is factually inapposite to this action.

In *Buddy Systems,* the district court conditioned its grant of a preliminary injunction upon the posting of a $100,000.00 bond. After trial, the district court entered a permanent injunction and released the bond. Buddy Systems appealed the permanent injunction, but not the premature release of the bond, and the Ninth Circuit reversed. Buddy Systems then filed suit to recover damages for wrongful issuance of a preliminary injunction, invoking jurisdiction under 28 U.S.C. § 1352. Section 1352 grants original jurisdiction to the district

courts over "any action on a bond executed under any law of the United States...."

The Ninth Circuit dismissed the action for lack of jurisdiction, but its holding was limited by the unusual facts of that case:

Thus our jurisdiction is not abrogated by the premature exoneration of the bond by the district court, but by Buddy Systems' own failure to take advantage of the available appellate remedies to have the alleged erroneous ruling reversed.

*Buddy Systems,* 545 F.2d at 1169 (footnote omitted). The explicit factual basis for the decision in *Buddy Systems,* therefore, is the failure to appeal. EPA has preserved its appellate rights in this case.

Moreover, the *Buddy Systems* court expressly disagreed with the Tenth Circuit's conclusion in *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097, 1100–01 (10th Cir. 1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970), that an action on a bond can be initiated under section 1352 after the security is returned to the plaintiff. *Buddy Systems,* 545 F.2d at 1168–70. This court has endorsed the Tenth Circuit rule in a case that cited *Buddy Systems* as an opposing viewpoint. *Piambino v. Bailey,* 757 F.2d 1112, 1142–43 (11th Cir.1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). Accordingly, the district court's reliance on *Buddy Systems* was misplaced. We conclude that *Alabama I* did not constrain the district court to discharge the posted security.

B. *The District Court's Alternative Holding*

1. Standard Of Review

After discussing *Alabama I,* the district court offered an alternative justification for discharge based upon equitable considerations. Before we consider that decision, we must define our standard of review.

The cases reveal that district courts use three competing standards when assessing damages in favor of "any party who is found to have been wrongfully enjoined or restrained" under Rule 65(c). *See Cappaert Enterprises v. Citizens & S. Int'l*

*Bank,* 564 F.Supp. 214, 217–18 (E.D.La. 1983). The first is the "automatic damages" standard, which requires an award whenever a party that has obtained a preliminary injunction is subsequently denied permanent injunctive relief. *See, e.g., Atomic Oil Co.,* 419 F.2d at 1103. At the opposite extreme is the "malicious prosecution" standard, which "applies only in cases where the applicant for injunctive relief fails to furnish adequate security." *Cappaert Enterprises,* 564 F.Supp. at 218 (citing *In re J.D. Jewell, Inc.,* 571 F.2d 928 (5th Cir.1978)). That standard prohibits a damages award unless the applicant for preliminary injunction acted maliciously and without probable cause.

The third standard involves "judicial discretion" and is thus the easiest to support and the most difficult to explain. In *Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994, 997 (D.C.Cir.1973), the court attempted a definition:

> Although Rule 65(c) required a bond here, it does not follow that the District Court was bound to award damages on the bond, without considering the equities of the case. The Rule did not make judgment on the bond automatic, upon a showing of damage. On the contrary, the court in considering the matter of damages was exercising its equity powers, and was bound to effect justice between the parties, avoiding any result that would be inequitable or oppressive for either party.

"Judicial discretion" appears to be the rule in this circuit, but the matter is not entirely clear. The former Fifth Circuit has said that an award "of damages pursuant to an injunction bond rests in the *sound discretion* of the court's equity jurisdiction." *H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977) (emphasis added). However, the court also used language supporting a "malicious prosecution" standard

("there is no liability for damages resulting from a suit for an injunction unless the injunction was obtained maliciously and without probable cause ...") on the same page of that opinion. *Id.* Another former Fifth Circuit case, *Grant v. Smith,* 574 F.2d 252 (5th Cir.1978), did not mention *H & R Block* but has been cited in qualified support of the "judicial discretion" standard by the United States District Court for the Eastern District of Louisiana. *Cappaert Enterprises,* 564 F.Supp. at 220–21.

■ *Cappaert Enterprises* held that "judicial discretion" was the rule in the former Fifth Circuit, *id.* at 221, and we agree with that conclusion. Accordingly, "judicial discretion" is the rule in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Such discretion is not unfettered and absolute; it exists subject to limitations imposed or implied by case law and statutory authority. However, district courts in this circuit have no guidelines to observe when contemplating damages against an injunction bond. We will review the district court's alternative holding under an abuse of discretion standard, *H & R Block,* 541 F.2d at 1099, but first we must attempt to define the bounds of that discretion.

2. The "Judicial Discretion" Standard: Variations On A Theme

In the abstract, judicial discretion can be unlimited, severely constrained, or anything in between. Defining "discretion" is an interesting intellectual exercise [5], but it can best be explained in the context of a specific situation. Many courts have applied a "judicial discretion" standard in the context of Rule 65(c), but the ultimate result is dependent upon the amount of discretion afforded to the district court as well as the facts of the case. A brief review of two cases will help us define our terms.

---

**5.** The concept of judicial discretion has been a popular subject for legal commentators over the years. Justice Aharon Barak of the Supreme Court of Israel has written the most recent treatise on this topic: the English version of his book, *Judicial Discretion,* was published in 1989. Justice Barak's treatise attempts to continue the discussion begun by Justice Benjamin Cardozo in his classic, *The Nature of the Judicial Process.*

In *Page Communications*, 475 F.2d at 996–97, the District of Columbia Circuit affirmed a district court decision not to assess damages against an injunction bond. The court of appeals deferred to the equitable discretion of the lower court, which justified its refusal to award damages by noting, among other things, that the lawsuit was not frivolous and that the plaintiff had "raised some solid questions." 475 F.2d at 996. *Page Communications* is often cited for its broad interpretation of the "judicial discretion" standard. *See, e.g., Zenith Radio Corp. v. United States*, 823 F.2d 518, 521 (Fed.Cir.1987).

The Seventh Circuit has taken a more limited view of discretion, holding that "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne–Delany Co. v. Capital Dev. Bd. of Illinois*, 717 F.2d 385, 391 (7th Cir.1983). The court believed that this approach was implied by the text of Rule 65(c) and elaborated as follows:

> When rules prescribe a course of action as the norm but allow the district court to deviate from it, the court's discretion is more limited than it would be if the rules were nondirective.... It is not a sufficient reason for denying costs or damages on an injunction bond that the suit had as in this case been brought in good faith. That would be sufficient only if the presumption were against rather than in favor of awarding costs and damages on the bond to the prevailing party....

*Id.* at 392. *Coyne–Delany* appears to represent the majority view among the circuits that have considered the issue. *Zenith Radio Corp.*, 823 F.2d at 521.

As noted above, the Eastern District of Louisiana has concluded that the "judicial discretion" standard was the rule in the former Fifth Circuit. *Cappaert Enterprises*, 564 F.Supp. at 221. Although *Cappaert Enterprises* was decided before

*Coyne–Delany*, the Louisiana court adopted the limited type of "judicial discretion" subsequently endorsed by the Seventh Circuit. *Id.* at 222. We agree with the thoughtful analysis of this issue in *Cappaert Enterprises*, where the court was bound by the same precedents that bind this panel. Accordingly, we will review the district court's decision in this case for an abuse of discretion, and we will apply the *Coyne–Delany* view of discretion under Rule 65(c) to the task.

### 3. The District Court Decision

■ In its opinion, the district court listed three factors as the bases for its equitable holding that Alabama should be discharged from its obligations on the injunction bond. First, Alabama allegedly brought this suit in *good faith* to protect its citizens from potentially harmful exposure to PCB-contaminated soil. Second, the importance of the environmental issue in this case implicated the *public interest* of Alabama citizens, as opposed to a proprietary or pecuniary interest of that state. Third, the district court concluded that EPA's decision to change its policy, and provide notice to states that were to receive shipments of hazardous waste, was directly related to Alabama's lawsuit. The court reasoned that despite this court's dismissal of the action in *Alabama I*, Alabama was nonetheless successful because one of its goals was achieved when EPA implemented the policy change.

On the first point, the Seventh Circuit has held that the good faith of the party seeking injunctive relief is not enough to justify the refusal to award damages on a bond. *Coyne–Delany*, 717 F.2d at 392. In light of the limited discretion afforded to the district court, good faith is a factor that should only be noteworthy when absent or when coupled with another basis for discharge. The district court was free to conclude that Alabama acted in good faith, but that conclusion alone does not tip the scales of equity in favor of discharge.[6]

---

**6.** Moreover, Alabama's "good faith" reason for bringing this action is not entirely clear. The district court opinion stated that Alabama's goal was "to protect its citizens from potential harm that could result from the presence of PCB-contaminated soil being brought into the State of

The second factor was the determination that Alabama's action was undertaken to protect the public interest on an issue of environmental concern. The environmental implications of hazardous waste disposal make it a subject of undeniable public interest to anyone who might be exposed to or affected by the PCB-contaminated soil at issue in this case. However, the district court seemed to focus narrowly on the public interest of Alabama citizens without considering the competing interests at stake.

Texas, for example, intervened to protect the interest of its citizens in this dispute, an interest that is equally as important as that of Alabama citizens. Texas could persuasively argue that its interest should predominate because its public was unprotected from the waste so long as it remained at the cleanup site, while the disposal facility in Alabama has been certified as a safe place to dispose of PCBs. It is therefore likely that the PCBs would present less of a threat to the citizens of Alabama if transported to Emelle than they presented to the citizens of Texas at the cleanup site.

The district court also apparently ignored the national public interest in prompt cleanup and disposal of hazardous waste. This court has previously recognized that Congress enacted CERCLA to facilitate safe and effective remedial actions without the inherent delays caused by litigation. *Alabama I*, 871 F.2d at 1557–58. The legislative history of 42 U.S.C. § 9613(h) demonstrates that Congress sought to preclude judicial review under CERCLA until the cleanup action was complete. *Id.* This statute thus reflects a Congressional determination that the national public interest in prompt completion of a remedial action outweighs any competing interest of a particular opponent seeking to prevent or delay that action.

We believe that the district court erred in concluding that Alabama furthered an important public interest by trying to enjoin

EPA's participation in the proposed cleanup effort. The court failed to consider the competing interests of Texas citizens and United States citizens that undeniably were implicated in this lawsuit.

The third and final factor was the district court's conclusion that Alabama's lawsuit produced a desired result when EPA decided to change its policy by providing notice to states of impending waste shipments from out-of-state remedial actions. Other cases have recognized that an unforseen change in the law, which occurs subsequent to filing suit and effectively prevents the plaintiff from obtaining permanent injunctive relief, is an equitable factor that militates against an award of damages on the injunction bond. *See Zenith Radio Corp.*, 823 F.2d at 521–22; *Coyne–Delany*, 717 F.2d at 392–93.

In the instant case, the "change of law" factor is irrelevant to the district court's exercise of its equitable discretion. EPA's policy change was announced on September 14, 1989, approximately five months *after* Alabama's suit was dismissed by this court in *Alabama I*. The suit was dismissed for lack of subject matter jurisdiction, and that decision was not affected by any change in the law announced after the complaint was filed but before the date of dismissal.

Alabama's lawsuit may have helped to inspire or hasten EPA's policy decision, but the causal connection, if any, is not readily apparent. In this case, Alabama *received* pre-shipment notice of the proposed remedial action, and "the EPA delayed the shipment to respond" to written concerns from Alabama officials regarding the nature of the hazardous waste at the cleanup site. *Alabama I*, 871 F.2d at 1553. This suit was not about lack of pre-shipment notice, but rather about Alabama's claim of entitlement to participate in the remedy selection process, a claim that Alabama lacked standing to raise. *Id.* at 1556. EPA's policy changes and proposals would not have

Alabama." Record, Volume 5, Tab 96 at 5. However, Alabama admitted that the proposed disposal site has been previously permitted to receive PCB-contaminated soil. Alabama's argument instead involved the deprivation of

landfill capacity for its *own* hazardous waste and the necessity of monitoring the transportation of waste from the Texas cleanup site to the disposal facility.

**392**

affected Alabama's claims even if implemented before the initiation of this action.

Accordingly, we hold that the district court abused its discretion when it discharged Alabama from any liability on the posted security. The court was obliged to award damages to EPA unless good reasons existed to deny such an award, and the three factors cited by the court are insufficient under the circumstances of this case. We therefore REVERSE and REMAND to the district court. On remand, the court should consider the damage claims submitted by EPA and Texas. However, the amount of the award is left to the discretion of the court. Stated differently, while we find that the equitable factors used to justify discharge could not legally support that decision, we leave the district court to consider the equities of the case in fashioning an award after affording EPA and Texas an opportunity to present evidence on the issue of damages.

REVERSED and REMANDED.