**CITY AND COUNTY OF DENVER, a municipal corporation, and the Denver Urban Renewal Authority, a body corporate and politic of the State of Colorado, Plaintiffs–Appellees,**

**and**

**Historic Denver, Inc., a Colorado non-profit corporation, Plaintiff–Intervenor–Appellee,**

**v.**

**AMERITRUST COMPANY NATIONAL ASSOCIATION, a national banking association organized under the laws of the United States, Defendant–Intervenor–Appellant.**

**No. 90CA2164.**

Colorado Court of Appeals,
Div. I.

Jan. 16, 1992.

Rehearing Denied Feb. 13, 1992.

Certiorari Denied July 13, 1992.

Office of City Atty., Patricia L. Wells, City Atty., Karen A. Aviles, Robert M. Kelly, Asst. City Attorneys, Denver, for plaintiffs-appellees.

Gibson, Dunn & Crutcher, George W. Bermant, Gregory J. Kerwin, Kevin M. Brady, Denver, for plaintiff-intervenor-appellee.

Baker & Hostetler, John B. Moorhead, Peter J. Korneffel, Jr., Timothy R. Beyer, Denver, for defendant-intervenor-appellant.

Opinion by Judge DAVIDSON.

Defendant, Ameritrust Company National Association (Ameritrust), appeals from the trial court's denial of its motion for costs and damages against plaintiffs, City and County of Denver (Denver), the Denver Urban Renewal Authority (DURA), and, by intervention, Historic Denver, Inc. (Historic Denver), for wrongful issuance of a temporary restraining order and a preliminary injunction. We affirm.

In September 1989, Denver and DURA filed a motion for a preliminary injunction seeking to enjoin certain entities not parties to this appeal and Ameritrust from demolishing the Central Bank West Building (building). The demolition was to be accomplished by December 28, 1989, as a condition of a complicated sale-lease back transaction between the defendants. According to the transaction, if the original owner declined to buy the building and met certain conditions, a surety company was obligated to pay $14.5 million to Ameritrust, the lending institution, under a Property Value Indemnity Bond and take title to the property. In 1988, the original owner opted to demolish the building rather than repurchase or renovate the bank building.

Subsequently, Denver and DURA, claiming that the building was protected from demolition under restrictive covenants within the city's Skyline Urban Renewal Plan and certain agreements between the parties, brought an action for declaratory judgment and for injunctive relief to enjoin defendants from demolishing the building until the legal questions could be determined.

On September 20, 1989, the trial court issued a temporary restraining order. On October 26, 1989, after permitting Historic Denver to intervene as a plaintiff, the court granted the plaintiffs' motion for preliminary injunction enjoining defendants from demolishing the building. At that time, the court ordered Historic Denver to post a $500 bond as security, but waived a security bond for Denver and DURA pursuant to C.R.C.P. 65(c).

The trial was held in April 1990. After the close of plaintiffs' case, the trial court ruled that the restrictive covenant relied on by the plaintiffs to prevent demolition was ambiguous and, thus, must be construed strictly against limitation on the use of property and in favor of its free and unrestricted use. Accordingly, it granted defendants' motion to dismiss pursuant to C.R.C.P. 41(b)(1). The court then issued a declaratory judgment in their favor and dissolved the preliminary injunction.

Thereafter, pursuant to C.R.C.P. 65(c) and 65.1, Ameritrust moved for recovery of costs and damages incurred as a result of the wrongful preliminary injunction. Spe-

cifically, claiming its damages might reach $14.5 million, the amount of the Property Value Indemnity Bond that the surety company refused to pay, it asked the court to retain jurisdiction pending the outcome of a related federal action between Ameritrust and the surety. The trial court denied this motion.

In its order, the court assumed without deciding "that Ameritrust was 'wrongfully' enjoined and could establish damages" but nevertheless found that it "would be inequitable and oppressive to award Ameritrust costs and damages in this action." The court also denied Ameritrust's motion for reconsideration for the same reasons.

Ameritrust appeals, basing its various contentions of error on the security requirements mandated by C.R.C.P. 65(c). That rule provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the state or of any county or municipal corporation of this state or of any officer or agency thereof acting in official capacity.

### I.

Ameritrust contends that under C.R.C.P. 65(c) plaintiffs are liable for damages caused by the wrongful preliminary injunction. We do not agree.

### A.

■ C.R.C.P. 65(c) imposes two conditions on an enjoined defendant seeking to recover damages on a bond: First, the injunction must have been "wrongful," and second, the defendant must have suffered damages as a result of the issuance of the injunction. *See Wick v. Pueblo West Metropolitan District,* 789 P.2d 457 (Colo.App. 1989). Here, because the trial court "assumed that Ameritrust was 'wrongfully' enjoined and could establish damages,"

these conditions are satisfied. At issue, therefore, is what discretion, if any, the trial court has to refuse damages on a bond if both these conditions are met.

Because Colorado has no authority on this precise question, we look to jurisdictions which, in interpreting similar rules, have addressed this issue. We note that, as relevant here, C.R.C.P. 65(c) is identical to Fed.R.Civ.P. 65(c).

The great majority of courts which have ruled on this issue have adopted a so-called "judicial discretion" standard in which the trial court has discretion in deciding whether to award damages on the bond. *See Alabama ex rel. Siegelman v. United States Environmental Protection Agency,* 925 F.2d 385 (11th Cir.1991). Although there are two other standards—the automatic damages and the malicious prosecution standards, *see Cappaert Enterprises v. Citizens & Southern International Bank,* 564 F.Supp. 214 (E.D.La.1983), relatively few jurisdictions follow these, and we are persuaded that the judicial discretion standard is most consistent with the plain language of the rule.

By its terms, C.R.C.P. 65(c) requires that an applicant give a bond, but it does not expressly order the court to pay that bond to a prevailing defendant. As we read the rule, the security is merely to ensure that an applicant is able to pay damages in the event that a court so requires.

In deciding to adopt this judicial discretion standard, we must also consider what limits are on that discretion. Although some courts view the trial court as having almost unlimited discretion to deny damages, *see H & R Block, Inc. v. McCaslin,* 541 F.2d 1098 (5th Cir.1976); *Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994 (D.C.Cir.1973), most others construe the pertinent rule as implying a preference for awarding damages. *See Alabama ex rel. Siegelman v. United States Environmental Protection Agency, supra; Coyne–Delaney Co. v. Capital Development Board,* 717 F.2d 385 (7th Cir. 1983).

Under this principle of preference, a trial court presumes that a prevailing defendant

is entitled to damages on the injunction bond, unless there is good reason for not requiring such payment in the particular case. *Coyne–Delaney Co. v. Capital Development Board, supra.* This "good reason" standard is the one we now adopt. As the *Coyne–Delaney* court stated: "Not only is it implied by the text of Rule 65(c) but it makes the law more predictable and discourages the seeking of preliminary injunctions on flimsy (though not necessarily frivolous) grounds."

### B.

The trial court applied this standard in denying Ameritrust's motion for costs and damages. Although Ameritrust does not argue that this was inappropriate, it contends that the trial court looked at the wrong factors in determining that "good reason" existed. We do not agree.

### 1.

In its brief to this court, Ameritrust appears to argue that a determination of "good reason" must be based exclusively on three factors set forth by the *Coyne–Delaney* court—resources of the parties, defendant's mitigation of damages, and outcome of the underlying suit—and that the trial court here erred by considering other factors. We do not read that decision so restrictively. In fact the *Coyne–Delaney* court itself specified those factors only as examples of legitimate grounds for a trial court to consider in determining whether "good reason" exists to deny damages.

Nonetheless, the trial court's discretion is somewhat circumscribed as to the factors it can consider. If, as here, a rule "prescribe[s] a course of action ... the [trial] court's discretion is more limited than it would be if the rule were nondirective." *Coyne–Delaney Co. v. Capital Development Board, supra. See* Friendly, *Indiscretion about Discretion,* 31 Emory L.J. 747 (1982). ■ Therefore, when an appellate court reviews a trial court's determination of "good reason," the standard of review regarding which factors the trial court has

used is akin to review by "the standard of simple error used in reviewing decisions of questions of law." *Coyne–Delaney Co. v. Capital Development Board, supra.* We review the trial court's order accordingly.

### 2.

■ The trial court's order, in pertinent part, stated:

A prevailing defendant is generally entitled to costs and damages incurred as a result of having been wrongfully enjoined unless there is good reason not to require plaintiff to pay in a particular case. [*Coyne–Delaney*] One good reason not to award such damages is where it would be oppressive and inequitable to do so. [*Page Communications*] In this action, the covenant was ambiguous and under Colorado law the Court had no choice but to construe it in favor of the Defendants. This was the sole basis for dissolving the preliminary injunction. The record in this case clearly supports the contention that all other equitable considerations favored the Plaintiffs. In addition, Plaintiff is a municipal corporation and Plaintiff-in-Intervention is a nonprofit, public interest corporation. Therefore, assuming that Ameritrust was 'wrongfully' enjoined and could establish damages, the Court, nevertheless, finds that it would be inequitable and oppressive to award Ameritrust costs and damages in this action.

We have little difficulty in concluding from this order that the court considered and balanced appropriate factors in determining that good reason existed to deny damages.

First, the trial court considered the outcome of the underlying suit, finding that the ambiguity of the covenant was "the sole basis for dissolving the preliminary injunction" and that "substantial evidence support[ed] [p]laintiffs' position" at both the preliminary and permanent injunction hearings. Although plaintiffs ultimately were unsuccessful at trial, it is quite apparent that their contentions were hardly frivolous.

Moreover, implicit in this finding is consideration of the fact that the claims were brought in good faith. Although good faith is not enough to defeat the assessment of damages, it is one of the factors which the court may consider. *See Zenith Radio Corp. v. United States,* 823 F.2d 518 (Fed.Civ.1987).

Third, the court considered the financial status of the parties, that is that plaintiffs were, respectively, a municipal corporation and a non-profit public interest group. *See Coyne–Delaney v. Capital Development Board, supra.* Certainly, insofar as Historic Denver is a non-profit public interest corporation, its financial status weighs heavily against an assessment of several million dollars in damages.

Fourth, and what was given primary consideration by the trial court, was the fact that the action was brought solely in the public interest. Confronted with the imminent destruction of an historic building, the plaintiffs had little choice but to seek an injunction until a court could determine the legal effect of the restrictive covenant. To impose a liability of $14.5 million in damages in this action could, if nothing else, significantly deter any further action brought for the public good.

Ameritrust argues that a damages award should be imposed precisely to make a plaintiff "think long and hard" before seeking such injunctive relief. From our review of the record, these plaintiffs did just that. Considering the circumstances, we conclude that they had few alternatives but to act as they did. To require them to bear the staggering consequential damages requested here would have a clear chilling effect on future good faith efforts brought in the public interest. Thus, the trial court's consideration of this factor was appropriate.

Other courts which have addressed the question have considered similar factors to determine whether good reason exists for denying damages. For example, the *Coyne–Delaney* court discussed good faith and change in the law, in addition to resources of the parties, whether the defendant mitigated the damages, and the out-come of the underlying suit. *See also Alabama ex rel. Siegelman v. United States Environmental Protection Agency, supra* (good faith, although insufficient alone, and public interest); *Cappaert Enterprises v. Citizens & Southern International Bank,* 564 F.Supp. 214 (E.D.La.1983) (enjoined party fails to oppose an injunction diligently, applicant fails to prevail solely because of an unanticipated change in circumstances, enjoined party profits in addition to being damaged by injunction); *Sierra Club v. Hodel,* 848 F.2d 1068 (10th Cir.1988) (legitimate environmental concerns having a high public interest litigated in good faith).

Ameritrust contends, however, that even if the trial court considered some appropriate factors in denying damages, it erred by including in its consideration the requirements set forth in *Rathke v. MacFarlane,* 648 P.2d 648 (Colo.1982) for the issuance of a preliminary injunction. Specifically, it argues that those factors are irrelevant. We disagree.

First, some of the *Rathke* factors, such as whether the injunction serves the public interest, are not only relevant but identical to specific "good reason" factors discussed in other cases. *See Alabama ex rel. Siegelman v. United States Environmental Protection Agency, supra.* Moreover, the fact that the trial court found that all of the *Rathke* equitable factors, except success on the merits, were in favor of the plaintiffs, is supportive of the court's finding that plaintiffs' claims were meritorious and made in good faith. *See Coyne–Delaney Co. v. Capital Development Board, supra.*

We conclude, therefore, that the trial court considered and evaluated appropriate factors in deciding that good reason existed to deny damages. In so holding, we do not imply that whenever a government or non-profit group acts in good faith and in the public interest to enjoin a property owner's use of its property that it is necessarily relieved of potential damage assessments. We conclude only that, under the facts at issue here, the trial court's determination of good reason was proper, and that, thus,

it did not err in denying Ameritrust's motion for damages. *See Zenith Radio Corp. v. United States, supra.*

## II.

Ameritrust contends that even if the court applied the correct legal standard to the "good reason" analysis under C.R.C.P. 65(c), the court committed reversible error by failing to make sufficient findings of fact under C.R.C.P. 52 in its order. We disagree.

While such findings generally are required for a judgment entered after a trial to the court, they are unnecessary on motions under C.R.C.P. 12 or 56 or any other motion except as provided in C.R.C.P. 41(b). C.R.C.P. 52; *see Leidy's, Inc. v. H2O Engineering, Inc.,* 811 P.2d 38 (Colo.1991).

■ Here, Ameritrust's motion for costs and damages was not a motion pursuant to C.R.C.P. 41(b), and therefore, no findings of fact and conclusions of law were required. *See McNeece v. McNeece,* 39 Colo. App. 160, 562 P.2d 767 (1977).

■ Moreover, even if C.R.C.P. 52 were applicable, the purpose for the specific findings of fact and conclusions of law is to give the appellate court a clear understanding of the grounds for the trial court's decision. *Financial Management Task Force, Inc. v. Altberger,* 807 P.2d 1230 (Colo.App.1990). As we are able to determine the basis of the trial court's judgment from its findings, we conclude that there has been sufficient compliance with C.R.C.P. 52.

## III.

■ Ameritrust also argues that the trial court, by denying its motion for costs and damages without a separate hearing on the motion, violated its constitutional right to due process. We disagree that there was error.

Generally, the trial court determines a motion on the written motion and submitted briefs, and it is within the discretion of the court whether to allow an evidentiary hearing. C.R.C.P. 121 § 1–15.

Here, Ameritrust did not request an evidentiary hearing on its motion for costs and damages, and, in denying that motion, the court did not order one. In ruling on the motion, the court assumed that Ameritrust could prove damages, but determined, based on the written motion and briefs, as well as the earlier injunction hearings, that an award of damages would be oppressive and inequitable. Upon motion for reconsideration from Ameritrust, the trial court allowed Ameritrust to submit further written argument and evidence, which the court accepted as an offer of proof, on the question of costs and damages. Nonetheless, the court denied the motion for reconsideration.

Ameritrust relies heavily on *Monroe Division, Litton Business Systems, Inc. v. De Bari,* 562 F.2d 30 (10th Cir.1977) to argue that it was entitled to a hearing. We do not agree.

In *Monroe,* the trial court denied the defendant's motion for costs and damages incurred as a result of a wrongful preliminary injunction without allowing a hearing on the motion. The United States Court of Appeals for the Tenth Circuit reversed, holding that the defendant had been unconstitutionally denied the opportunity to be heard. However, in *Monroe,* there was a "genuine dispute as to material facts relating to the damage to the defendant." Here, in contrast, there is no dispute because the trial court assumed that Ameritrust could prove damages. Also, in *Monroe,* the defendant had requested a hearing; here, Ameritrust did not. Moreover, as Denver and DURA correctly assert, there is no federal rule similar to our C.R.C.P. 121 § 1–15 giving the trial court the discretion not to hold a hearing on a motion.

Thus, under the facts of this case, we perceive no due process violation and do not agree with Ameritrust's assertion that *Monroe* demands a different conclusion.

## IV.

Because we conclude that the trial court did not abuse its discretion in denying Ameritrust's motion for costs and damages,

**1060**

we do not reach Ameritrust's contention that a plaintiff's liability for damages may exceed the limit of its bond.

Also, because it was not raised, we do not address any issue as to the propriety or amount of an award of costs against any plaintiff pursuant to C.R.C.P. 54(d).

The judgment is affirmed.

STERNBERG, C.J., and PIERCE, J., concur.