United States Court of Appeals,

Eleventh Circuit.

Nos. 94-6034, 93-6835, 93-6842 and 93-6877.

NORTH ALABAMA EXPRESS, INC., an Alabama corporation.  AAA Cooper Transportation, Inc., an Alabama corporation, Petitioners,

Milan Express, Inc.;  James H. Evans and the Alabama Public Service Commission, Intervenors,

v.

INTERSTATE COMMERCE COMMISSION;  United States of America; Averitt Express, Inc., and Deaton, Inc., Respondents.

In re AVERITT EXPRESS, INC.;  Deaton, Inc., Petitioners,

James H. Evans, in his official capacity as Attorney General of the State of Alabama and on behalf of the district attorneys of the State of Alabama, Milan Express, Inc., Intervenors.

In re NORTH ALABAMA EXPRESS, INC., Milan Express, Inc., Petitioners,

Averitt Express, Inc.;  Deaton, Inc., and James H. Evans, in his official capacity as Attorney General of the State of Alabama and on behalf of the district attorneys of the State of Alabama; Alabama Public Service Commission, Intervenors.

AVERITT EXPRESS, INC.;  Deaton, Inc., Plaintiffs-Appellants,

v.

Jim SULLIVAN, Charles B. Martin, Jan Cook, Commissioners, in their official capacities as Commissioners of the Alabama Public Service Commission;  United States of America, Defendants-Appellees,

Milan Express, Inc., a Tennessee Corporation, Intervenor-Defendant,

James H. Evans, in his official capacity as Attorney General of the State of Alabama and on behalf of the district attorneys of the State of Alabama;  North Alabama Express, Inc., and AAA-Cooper Transportation, Inc., Intervenors.

Aug. 25, 1995.

Petition for Review of an Order of the Interstate Commerce Commission (ICC No. MC-F-19804).
Appeal from the United States District Court for the Middle District of Alabama (No. CV93-D-1192-N) Ira DeMent, Judge.

Petition for Writ of Mandamus to the United States District Court for the Middle District of Alabama.

Before ANDERSON and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

In a second petition for review to this Court, North Alabama Express, AAA-Cooper Transportation Inc., and Milan Express challenge the Interstate Commerce Commission's order permitting the transfer of intrastate trucking authority from Deaton, Inc. to Averitt Express, Inc. We grant the above-named parties' petition, but because the Interstate Commerce Commission (the "ICC") misinterpreted our prior opinion, we must again set aside the ICC's order. *North Alabama Express, Inc. v. ICC,* 971 F.2d 661, 663-65 (11th Cir.1992), *modified on rehearing to delete one sentence of dictum,* 996 F.2d 1072 (11th Cir.1993).

On that petition, we held that the ICC lacked the power to approve or exempt the transfer of the intrastate routes involved in this case because the transaction did not constitute a change in interstate commerce. The ICC apparently interpreted this decision as requiring only that there be a change in interstate "authority" to give it the power over the intrastate routes. A transfer of interstate authority which has not been used, and will not be used by the transferee, however, does not constitute a change in *commerce.* The prior opinion specifically required a change in interstate commerce, not just a change in interstate *authority.* A paper change without any real change in commerce presents precisely the same nature of the transaction argued by the objectors.

In addition, it is quite apparent from the prior opinion, that

the transfer of intrastate certificates must be related to the change in interstate commerce. Obviously, as the case stood before the court on the prior appeal, there could be no relation of the intrastate routes to a change in interstate commerce if there was no change in interstate commerce. There are therefore two questions unanswered. Even though the ICC did find a change in interstate "authority," it did not find this would result in a change in interstate "commerce," and in any event, it made no effort to show what relation the intrastate transfer had to the interstate transfer.

The disputed transfer occurred in late December 1990 or early January 1991 when Averitt contracted to purchase a portion of Alabama Certificate 695 from Deaton. The purchase would allow Averitt to transport—with a few exceptions—general commodities in intrastate commerce in the state of Alabama within designated areas around Birmingham, Mobile, and Selma.

After Averitt and Deaton filed an application for approval with the Alabama Public Service Commission, several motor carriers opposed the proposed transfer. The commission set a hearing on the application for March 7, 1991.

On February 8, 1991, prior to the scheduled hearing before the state commission, Deaton, Inc. and Averitt Express, Inc. filed a joint notice of exemption of a transfer transaction under 49 U.S.C. § 11343 with the ICC. Deaton and Averitt sought exemption from the applicable merger, consolidation, and acquisition of control provisions of the Motor Carrier Act pursuant to 49 U.S.C. § 11343(e). Deaton proposed to transfer its interstate authority to

transport general commodities between points in five southern states, including Alabama. As part of this transaction, the parties also sought approval of the same transfer of intrastate authority proposed to the Alabama Public Service Commission. Trucking companies North Alabama Express, AAA-Cooper, Milan Express, and Neely Truck Line opposed the ICC's approval of the transfer. The ICC determined that section 11341(e) governed and that section 11341 gave it exclusive jurisdiction over the entire transaction, including the transfer of intrastate operating rights. *Averitt Express, Inc.—Purchase (Portion) Exemption—Deaton, Inc.,* 7 I.C.C. 634, 1991 WL 149941 1991 MCC Lexis 95 (1991). North Alabama and AAA-Cooper as petitioners, as well as Milan Express and the Alabama Public Service Commission as intervenors, sought review of that order.

On review, this Court agreed that section 11343 authorized the ICC to allow transfers of both interstate and intrastate operating rights. The Court held, however, that the agency could not authorize the transfer of intrastate rights based on the record before it. In *North Alabama,* we said the ICC lacks power to transfer intrastate rights "absent some connection between the proposed transaction, the intrastate authority, and interstate commerce." 971 F.2d at 665. To establish the connection, the intrastate rights must have "some relationship with the change in interstate commerce resulting from the proposed transaction." *Id.*

On the record before the Court, we held that the transfer would neither enlarge Averitt Express's ability to transport in interstate commerce, nor would it reduce Deaton's authority to

transport in interstate commerce.  Thus, the proposed transfer effected no substantive change in interstate commerce.  Finding no change in interstate commerce to which the transfer of intrastate rights could "relate," the court set aside the portion of the ICC decision declining to revoke the exemption for the transfer of intrastate rights.

Averitt and Deaton filed petitions to reopen the exemption proceeding to allow them to meet the test set out in *North Alabama.* The ICC denied the request to reopen the proceeding, but treated the petition and responses as new evidence and entertained additional comments from the parties.  On December 10, 1993, the ICC entered a new order that again approved the transfer of the Alabama intrastate certificate.  *Averitt Express, Inc.—Purchase (Portion) Exemption—Deaton, Inc.,* 9 I.C.C. 1232, 1993 WL 514412 1993 ICC Lexis 272.

The ICC stated that upon further review, the supplemented record indicated that Averitt will gain interstate authority it did not have before, and Deaton will lose interstate authority it previously possessed.  Under the proposed transfer, Averitt would be able to transport household goods and commodities in bulk among five states, which it could not do before.  On the other hand, Deaton would lose its household goods authority and much of its bulk authority in those states.  The ICC decided that such a "change in each party's "ability to transport certain [items] in purely interstate commerce[,]' ... satisfies the "change in authorities test' established by the court in *North Alabama.*  9 I.C.C. 1232, 1993 WL 514412 at *3 1993 ICC Lexis at 272, *11.

Petitioners seek review of this order.

As a preliminary matter, the objectors argue the ICC acted outside its authority in reopening the prior proceeding to receive new evidence and to reconsider the validity of the transfer without a formal remand from this Court. The ICC has broad statutory authority to reopen a proceeding at any time "because of material error, new evidence, or substantially changed circumstances." 49 U.S.C. § 10322(g)(1). In this case, where the Court made clear the legal error, despite the absence of a formal remand, the agency acted within its authority in reopening the prior proceeding for additional evidence.

The objectors argue that this type of transaction does not qualify for exemption under section 11343(a)(2), and that the ICC's actions exceed the boundaries of the Commerce Clause and violate the Tenth Amendment. These arguments were raised and rejected in the previous appeal. We need not address them further as the prior opinion constitutes the law of the case. See *Burger King Corp. v. Pilgrim's Price Corp.,* 15 F.3d 166, 169 (11th Cir.1994).

*Issues on Appeal*

Petitioners raise two issues we must address on this appeal. *First,* North Alabama, AAA-Cooper and Milan Express (collectively, the "objectors") argue there is not sufficient evidence to support the ICC's finding that there has been the "change in authorities" required under *North Alabama.*

*Second,* they argue that the transaction is void because there is no relationship between the interstate and intrastate transfer.

Essentially, the objectors contend here, as they argued

previously, that the transaction is a sham. They assert that Averitt and Deaton cooked up what is essentially a meaningless interstate transfer to bootstrap onto it the intrastate transfer they presumed would not otherwise be approved by the state commission. The panel agreed with objectors in the prior opinion that the ICC could not rely upon a "sham" transaction to justify rewriting intrastate certificates. 971 F.2d at 665.

*A. Change in authority*

As to the first issue, we hold that the record supports a decision that the transfer does effect a change in *authority* to transport goods in interstate commerce. Averitt would acquire authority it did not previously have to transport household goods and bulk commodities in interstate commerce. Deaton would lose the authority to transport household goods and retain only limited bulk service.

The interstate authority transferred from Deaton to Averitt is Interstate Certificate of Convenience and Necessity issued in Docket NO. MC-11207 (Sub-No. 574)X, which:

> authorizes transport of general commodities (except Classes A and B explosives) between points in AL, GA, LA, MS, and TN, over irregular routes.

The transferred Alabama intrastate authority from Deaton to Averitt includes a portion of Alabama Intrastate Certificate No. 695, authorizing the transport over irregular routes in intrastate commerce in Alabama of certain commodities.[1]

---

[1] (1) General Commodities (except commodities in bulk, Classes A and B explosives and commodities which because of size or weight require the use of special handling or equipment):

According to the joint notice of exemption, Deaton is primarily a truckload carrier that uses flatbeds, lowboys, and other special equipment to transport size and weight commodities. On the other hand, Averitt transports general commodities in vans.

Between all points within a radius of 125 miles of Birmingham.  Between Birmingham and all points within 15 miles thereof, and Mobile and points within 15 miles thereof.

Restriction:  restricted against the transportation of the above named commodities on flatbed or lowboy trailers.

(2) General commodities (except high explosives, commodities injurious to other lading and commodities which because of size or weight require the use of special handling or equipment):

Between Mobile and points within ten miles thereof on the one hand, and Selma and points within ten miles thereof, on the other hand.

Restriction:  Restricted against the transportation of the above named commodities on flatbed or lowboy trailers.

Deaton retains the following intrastate authority:

(1) General Commodities (that because of size or weight require the use of special handling or equipment; including flatbed and lowboy trailers:

Between all points within a radius of 125 miles of Birmingham;  between Birmingham and all points within 15 miles thereof, and Mobile and all points within 15 miles thereof.

Between Mobile and points within 10 miles thereof, on the one hand, and Selma and points within 10 miles thereof, on the other.

(2) Structural Steel products, steel tubing, steel pipe, cast iron pipe, cast iron fittings, cast iron valves, and fire hydrants, (that because of weight require special handling or equipment) from Jefferson County and precast concrete panels (that because of size or weight require special handling or equipment) from Pelham;  to all points in Alabama in truckload shipments only, utilizing flatbed trailers.

Averitt transports no size and weight commodities. The ICC found in its second opinion that Averitt has developed from a predominantly regular route, general commodity carrier with operations confined to points in Tennessee, to a multi-state carrier. It holds a number of certificates that authorize nationwide transportation of general commodities. With minor exceptions, all of Averitt's authority is *restricted* against transportation of household goods and commodities in bulk. *Averitt Express,* 9 I.C.C. 1232, 1993 WL 514412 1993 ICC Lexis at 272, *6.

The transferred authority permits the transportation of household goods and to a lesser degree, commodities in bulk, so Averitt has authority to transport additional major categories of traffic. Deaton's retained authority *excludes* the transportation of household goods and allows only limited bulk service. Based on the additional evidence as outlined in the ICC's December 10 opinion, it appears that the *authority* of the parties to transport in interstate commerce has been altered.

*B. Change in Interstate Commerce*

The change in *authority,* however, does not necessarily result in a *change in commerce* sufficient to carry a transfer of intrastate routes. The prior opinion specifically stated that the ICC's jurisdiction depends upon a "change in interstate commerce," 971 F.2d at 665, and that the intrastate rights must have "some relationship with the change in interstate commerce...." *Id.*

The objectors argue that because Deaton never transported household goods and commodities in bulk prior to the transfer of authority and Averitt does not transport these goods under that

authority, in effect there has been no change in interstate commerce.

The record provided to this Court in this case, No. 94-6034, *North Alabama Express, Inc. v. Sullivan,* is woefully sparse. The entire record on appeal consists of the parties' joint notice of exemption with an attachment; the ICC's notice exempting the transfer subject to public comment; and the two relevant ICC opinions.

The following statement made by Vice Chairman Simmons in his dissent that Averitt has not used and has no intention of using the interstate authority transferred is unchallenged in the Commission's opinion, in the record, and by Averitt on appeal:

> Here, Averitt has never conducted operations under the authority in question and, despite protestations to the contrary, apparently has no intention to do so. In my opinion, in order to show the requisite "change in interstate commerce,' a purchaser should show that it is acquiring interstate authority not presently held as well as substantial evidence of its intention to use that authority to provide a new and ongoing interstate service.

There is no evidence in the record on appeal to support the ICC's assertions to the contrary. The transfer of interstate authority that has not been used by the transferor to a transferee, who has no intention of using it, creates no change in "interstate commerce."

*C. Relationship Between Intrastate and Interstate Authority and Change in Interstate Commerce*

Finally, objectors assert the transfer is a sham because the parties failed to show the relationship between the intrastate and interstate transfers, highlighting the conflicts between the interstate and intrastate certificates. Contrary to objectors'

assertion, the statute does not require the parties to show the intrastate authority is "necessary" to the transfer. It is only after the Commission approves or exempts a transfer of intrastate and interstate authority that section 11341(a) then exempts that entire transaction from state law "as necessary" to carry out the transaction. 49 U.S.C. § 11341(a).[2]

While the statute requires no showing of necessity to approve such a transfer, obviously there must exist some relationship between the interstate and intrastate authority being transferred. In our prior opinion, we specifically upheld the ICC's authority to transfer intrastate certificates, even if the transfer violates state law, if such action is "related to" the change in interstate commerce. *North Alabama,* 971 F.2d at 667. Although the level of relationship does not seem to have been developed, it would appear that the ICC's authority must rest on a sufficient connection between the interstate transfer and the attempted intrastate transfer to make the ICC's action reasonable. Objectors argue no relationship exists between the transferred intrastate authority and interstate authority by highlighting the conflicts between the

_____

[2]49 U.S.C. § 11341(a) reads

(a) The authority of the Interstate Commerce Commission under this chapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or *exempted* by the Commission under this subchapter may carry out the transaction, own and operate property, and exercise control or franchises acquired throughout the transaction without the approval of a state authority. A carrier, corporation, or person participating in that approved or exempted transaction is *exempt* from the antitrust laws and from all other laws, including State and municipal law ... as necessary to let that person carry out the transaction. (emphasis added).

interstate and intrastate certificates. For example, Averitt would be permitted to transport interstate commodities in bulk which it cannot transport intrastate. The ICC failed to decide there was any relationship in this transaction. Absent a finding of a reasonable connection between the intrastate and interstate routes, supported by the evidence, as well as a change in interstate commerce, the ICC had no power to invade the state's authority over the intrastate commerce. *North Alabama,* 971 F.2d at 665.

After the briefing period but prior to oral argument, the ICC and the United States moved to dismiss the appeal as moot based on the recent enactment of the Federal Aviation Administration Authorization Act of 1994. Section 601(c) of the Act preempts the states from continuing to control certain aspects of the intrastate transportation of property. We leave to the ICC the determination as to what, if any, impact the Act has on this case.

The parties conceded at oral argument that a decision such as the one we have here rendered would moot the related cases pending before this Court, specifically No. 93-6842, *In re North Alabama, Averitt Express, Inc. v. Sullivan,* and No. 93-6835, *In re: Averitt Express, Inc.* Those appeals are therefore dismissed as moot.

*Conclusion*

In our prior opinion, we SET ASIDE the ICC's Order to the extent that it permitted the transfer of intrastate routes. Since there is nothing in the record to indicate that there has been any change in interstate commerce or any relationship between the intrastate and the interstate transfer that affects interstate commerce, we GRANT the petition for review and again SET ASIDE the

ICC's Order to the extent that it permits the transfer of the intrastate routes.

PETITION GRANTED AND ICC ORDER IS SET ASIDE.

No. 93-6842—DISMISSED AS MOOT.

No. 93-6877—DISMISSED AS MOOT.

No. 93-6835—DISMISSED AS MOOT.